UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE L. RAMIREZ,

                              Plaintiff,

                    -v.-

NYP HOLDINGS, INC.,

                              Defendant.

18 Civ. 12058 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Jose Ramirez, a newspaper "feeder" at Defendant NYP Holdings, Inc.'s Bronx Print Center (the "Print Center"), brings this suit against Defendant, claiming race and national origin discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, *codified as amended at* 42 U.S.C. §§ 2000e to 2000e-17; intentional employment discrimination on the basis of race in violation of 42 U.S.C. § 1981; and discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 290-297 (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 to 8-131 (the "NYCHRL"). Ramirez, who is Hispanic and of Puerto Rican descent, alleges that: (i) he and other Hispanic employees at the Print Center were isolated as a group and given the worst job assignments; (ii) he and other Hispanic employees at the Print Center were not promoted to better job positions as quickly as white employees; (iii) he was repeatedly subjected to racial slurs and other derogatory comments; (iv) when he and other Hispanic employees complained about their mistreatment to their white foremen, they were instructed to ignore the

derogatory comments directed at them; and (v) he was suspended, and ultimately terminated, for discriminatory reasons. Defendant has moved to dismiss Plaintiff's operative complaint on the grounds that: (i) Plaintiff's non-federal claims are barred by the election of remedies doctrine; (ii) Plaintiff's § 1981 claims are precluded under *res judicata*; and (iii) Plaintiff has failed to state a claim for discrimination, retaliation, or hostile work environment under Title VII.[1] For the reasons set forth in the remainder of this Opinion, Defendant's motion to dismiss is granted in part and denied in part.

## BACKGROUND[2]

### A. Factual Background

Plaintiff is a Hispanic man of Puerto Rican descent. (SAC ¶ 1). Until his suspension and termination in November 2017, Plaintiff had been employed as

---

[1]    In this Opinion, the Court uses "discrimination" to refer to disparate treatment based on a protected characteristic, which the Court distinguishes from discrimination in the form of a hostile work environment.

[2]    The facts contained in this Opinion are drawn principally from Plaintiff's Second Amended Complaint, which is the operative pleading in this case and is referred to in this Opinion as the "SAC." (Dkt. #31). The Court also draws facts from certain exhibits attached to the Declaration of Steven G. Mintz, Esq. in Support of Defendant's Motion to Dismiss the Second Amended Complaint, referred to as the "Mintz Decl." (Dkt. #34). Specifically, the Court takes judicial notice of Plaintiff's complaint to the New York State Division of Human Rights (the "SDHR") (Dkt. #34-1) and the SDHR's Determination and Order (Dkt. #34-2). *See Amaya* v. *Ballyshear LLC*, 295 F. Supp. 3d 204, 217 (E.D.N.Y. 2018) (explaining that the court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment"). The Court similarly draws facts from the Suspension and Last Chance Agreement (the "LCA") between Plaintiff and Defendant, as the agreement is both incorporated into Plaintiff's SAC by reference and relied upon by Plaintiff in bringing suit. *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

For ease of reference, the Court refers to the parties' briefing as follows: Defendant's opening brief as "Def. Br." (Dkt. #32); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #36); and Defendant's reply brief as "Def. Reply" (Dkt. #37).

As a final note, the Court recognizes that Plaintiff is appearing *pro se* in this matter. "It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). However, Plaintiff's

a "feeder" by Defendant. (*Id.*). At all relevant times, Plaintiff worked at the Print Center in the Bronx, New York. (*Id.*). In his work at the Print Center, Plaintiff and other Hispanic employees were isolated and given the worst job assignments and the least desirable work shifts by white foremen, in comparison to similarly situated white employees of the same seniority. (*Id.* at ¶ 2). Further, Plaintiff and his Hispanic co-workers were not promoted to better job positions as quickly as white employees. (*Id.* at ¶ 4). Plaintiff's co-workers, including Mike Falco, repeatedly referred to Plaintiff as a "typical Spic," and other co-workers such as Michelle Sage and "Danielle" (last name unknown) also regularly made similarly racially derogatory comments. (*Id.* at ¶ 9). When Plaintiff and the other Hispanic employees at the Print Center complained about their mistreatment to white foremen, they were instructed to ignore the racially derogatory comments made by white employees. (*Id.* at ¶ 3).

On or about November 16, 2017, Plaintiff was asked to come into work because the Print Center was short-staffed. (SAC ¶ 5). A white foreman assigned Plaintiff to work as a "material handler" for the day. Plaintiff found himself working in the immediate vicinity of Chris Sullivan, a white man (*id.* at ¶ 7), and when the foreman left the floor, Sullivan left his designated work area — in violation of company policy — and began yelling at Plaintiff (*id.* at

---

SAC and opposition brief were "prepared with assistance from the New York Legal Assistant Group's Legal Clinic for Pro Se Litigants in the Southern District of New York." (*See, e.g.*, Pl. Opp. 1 n.1). Therefore, the Court will not accord these documents the solicitude ordinarily given to *pro se* submissions. *See Littlejohn* v. *Consol. Edison Co. of N.Y., Inc.*, No. 18 Civ. 6336 (KPF), 2019 WL 3219454, at *1 (S.D.N.Y. July 17, 2019).

¶ 8). Sullivan yelled comments such as, "It's because of people like you that we lose our jobs," and "People like you are worthless." (*Id.* at ¶ 8). Plaintiff alleges that such comments were typical of the hostile work environment to which Plaintiff was subjected throughout his employment. (*Id.* at ¶ 16). After enduring Sullivan's repeated comments, Plaintiff yelled back at Sullivan, asking him why he was making such comments. (*Id.* at ¶ 10). Plaintiff's foreman then ordered Plaintiff to go home for the rest of the day, calling security guards to escort Plaintiff from the premises, while Sullivan was permitted to return to work. (*Id.* at ¶¶ 11-12). The foreman explained to the security guards that he had told Plaintiff "to stop and he didn't stop." (*Id.* at ¶ 13).

After the incident with Sullivan, Plaintiff's union informed Plaintiff that Defendant had indefinitely suspended him. (SAC ¶ 15). However, because Plaintiff had signed a "last chance agreement" (or "LCA") with Defendant 18 months prior to the incident with Sullivan, Plaintiff's suspension resulted in an automatic termination of his employment with Defendant. (*Id.* at ¶ 18). On January 29, 2018, Plaintiff filed a complaint with the New York State Division of Human Rights (the "SDHR") alleging that Defendant had discriminated against him based on his age, national origin, race, and sex. (Mintz Decl., Ex. A at 4, 10). The complaint explained that Plaintiff faced routine harassment and verbal abuse at the Print Center and it described the November 2017 incident with Sullivan. (*Id.*). On July 27, 2018, the SDHR issued a Determination and Order that found "No Probable Cause" to believe

that Defendant had engaged in any of the unlawful discrimination alleged in the January 2018 complaint. (*Id.*, Ex. B). Specifically, the SHDR found that Plaintiff had "failed to proffer evidence connecting his class membership to any action taken against him by [Defendant] and he was unable to provide any witnesses to corroborate the allegations of the complaint." (*Id.* at 4). The SDHR also found that Defendant had "articulated a legitimate, non-discriminatory reason for how [Plaintiff] was treated which [had] not been proven to be a pretext for discrimination." (*Id.* at 5).

**B.    Procedural Background**

Plaintiff filed his initial complaint *pro se* in this action on December 20, 2018. (Dkt. #2). The parties were referred to the Court-annexed mediation program on January 2, 2019 (Dkt. #6), but the Court then removed the case from mediation after Defendant made clear its intention to move to dismiss (Dkt. #15, 21). Defendant requested a conference to discuss an anticipated motion to dismiss on May 14, 2019 (Dkt. #15), and the parties appeared before the Court for said conference on June 14, 2019 (Minute Entry for June 14, 2019). At that conference, the Court spoke with Plaintiff about potential deficiencies in his pleadings and provided him with the opportunity to amend his original complaint. (Dkt. #19).

Plaintiff filed his First Amended Complaint, drafted with the assistance of the New York Legal Assistance Group ("NYLAG"), on July 17, 2019 (Dkt. #23), and Defendant responded with a motion to dismiss, with accompanying memorandum and declaration, on August 28, 2019 (Dkt. #24-26). However, on

5

September 13, 2019, Plaintiff informed the Court that the amended complaint he had submitted was incomplete and requested the opportunity to file a complete complaint, and for Defendant to then file a new motion responsive to that complaint. (Dkt. #29). The Court granted Plaintiff's request on September 16, 2019 (Dkt. #30), and Plaintiff filed his SAC, also prepared with the assistance of NYLAG, that same day (Dkt. #31). The SAC alleges claims of: (i) discrimination based on race and national origin, retaliation, and hostile work environment under Title VII; (ii) intentional employment discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981; and (iii) employment discrimination based on race and national origin under the NYSHRL and the NYCHRL. (Dkt. #31).[3] Defendant filed a new motion to dismiss, with accompanying memorandum, declaration, and an affidavit, on September 26, 2019. (Dkt. #32-35). Plaintiff filed an opposition brief, prepared with the assistance of NYLAG, on November 12, 2019. (Dkt. #36). Defendant filed its reply brief on December 3, 2019. (Dkt. #37).

---

[3]     Plaintiff used the fillable Employment Discrimination Complaint provided by the Court's Pro Se Office, which simply provides checkboxes for statutes that a plaintiff wishes to claim violation of and then checkboxes for the alleged adverse employment actions. *See, e.g.,* Employment Discrimination Complaint, http://www.nysd.uscourts.gov/sites/default/files/2018-06/Employment%Discrimination.pdf. Given the lack of clarity as to exactly which adverse employment actions Plaintiff is challenging under the NYSHRL and the NYCHRL, as opposed to under Title VII, the Court relies on Plaintiff's briefing for the determination that Plaintiff is solely bringing a discrimination claim pursuant to those non-federal statutes. (*See* Pl. Opp. 2 n.3).

**DISCUSSION**

**A.    The Court Dismisses Plaintiff's Non-Federal Claims Based on the Election of Remedies Doctrine**

**1.    Applicable Law**

Under the election of remedies doctrine, a complainant who files a complaint with either the SDHR or the New York City Commission on Human Rights (the "CCHR") cannot subsequently sue in court on the same claims.  *See generally Bleichert* v. *N.Y. State Educ. Dep't*, — F. App'x —, No. 19-862, 2019 WL 6704979, at *2 (2d Cir. Dec. 10, 2019) (summary order); *Desardouin* v. *City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013).  That rule is set forth in the text of both the NYSHRL and the NYCHRL.  *See York* v. *Assoc. of the Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002); *Higgins* v. *NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011).  Section 297(9) of the New York State Executive Law, which is part of the NYSHRL, reads, in relevant part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, ... unless such person had filed a complaint hereunder or with any local commission on human rights, ... provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9).  Section 8-502(a) of the New York City Administrative Code contains an analogous election of remedies clause:

> Except as otherwise provided by law, any person claiming to be aggrieved by an unlawful discriminatory practice as defined in chapter 1 of this title or by an act

> of discriminatory harassment or violence as set forth in chapter 6 of this title shall have a cause of action in any court of competent jurisdiction ... unless such person has filed a complaint with the city commission on human rights or with the state division of human rights with respect to such alleged unlawful discriminatory practice or act of discriminatory harassment or violence.

N.Y.C. Admin. Code § 8-502(a); *see also Dixon* v. *Krasdale Foods, Inc.*, No. 13 Civ. 3045 (CM), 2013 WL 6334439, at *2 (S.D.N.Y. Dec. 4, 2013) (noting similarity).

Thus, under both the NYSHRL and the NYCHRL, "the remedies of administrative review through the [SDHR and CCHR] or judicial review are *mutually exclusive.*" *Moodie* v. *Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 882 (2d Cir. 1995) (emphasis in original). "Once a complainant elects the administrative forum by filing a complaint with the [SDHR or CCHR], a subsequent judicial action on the same complaint is *generally barred.*" *Id.* at 883 (emphasis in original); *accord McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) ("If the district court then determined that McLeod had previously filed a complaint with the relevant state or city agencies, any such NYSHRL and NYCHRL claims would be dismissed under election of remedies principles."). What is more, "[t]he election of remedies bar is jurisdictional; a complaint that has previously been dismissed by the [SDHR or CCHR] must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Marecheau* v. *Equal Emp't Practices*

*Comm'n*, No. 13 Civ. 2440 (VEC), 2014 WL 5026142, at *4 (S.D.N.Y. Sept. 30, 2014).

The election of remedies doctrine imposes two kinds of jurisdictional bars: one direct and one derivative. *See Smith* v. *Sch. of Visual Arts*, No. 15 Civ. 8049 (RA), 2016 WL 3440553, at *2 (S.D.N.Y. June 9, 2016). The direct bar divests a court of subject matter jurisdiction over any claims previously submitted to the SDHR or CCHR. *Id.* The derivative bar prevents courts from hearing "'claims arising out of the same incident[s] on which [an SDHR or CCHR] complaint was based.'" *Id.* (quoting *Higgins*, 836 F. Supp. 2d at 188). Because of the derivative bar, "[c]laims need not be identical in order to be barred by the state or city election of remedies provisions." *Rosario* v. *N.Y.C. Dep't of Educ.*, No. 10 Civ. 6160 (DLC), 2011 WL 1465763, at *2 (S.D.N.Y. Apr. 15, 2011). If "a sufficient identity of issue[s] exists between" the claims a plaintiff pursued before the SDHR or CCHR, and those he alleges in his complaint, then the election of remedies doctrine precludes a court from adjudicating his claims. *Id.* (quoting *Spoon* v. *Am. Agriculturalist, Inc.*, 478 N.Y.S.2d 174, 175 (3d Dep't 1984)).

The election of remedies derivative bar is expansive. A plaintiff cannot escape the bar by raising a new legal theory if that theory is premised on the same events underlying his SDHR or CCHR complaint. *Owens* v. *Starbucks Corp.*, 37 N.Y.S.3d 207, 2016 WL 1602753, at *3 (N.Y. Sup. Ct. Apr. 21, 2016); *see, e.g., Rasmy* v. *Marriott Int'l, Inc.*, No. 16 Civ. 4865 (AJN), 2017 WL 773604, at *2, 5 (S.D.N.Y. Feb. 24, 2017) (finding that election of remedies doctrine

barred plaintiff from pursuing NYCHRL hostile work environment claim in federal court, even though he had sought relief under only the NYSHRL before the SDHR, because in both actions plaintiff's claims "ar[o]se from the same discriminatory practices" and were "premised on substantially the same series of incidents" (internal quotation marks omitted)); *Musaji* v. *Banco do Brasil*, No. 10 Civ. 8541 (RJH), 2011 WL 2507712, at *5 (S.D.N.Y. June 21, 2011) (collecting New York cases supporting the proposition that "a plaintiff merely asserting a new legal theory in front of a court based on the same underlying conduct alleged at the [CCHR] is barred from the judicial remedy sought"); *Rosario*, 2011 WL 1465763, at *2 (finding that court lacked subject matter jurisdiction to consider plaintiff's claim that he was suspended from work based on his nationality, even though before the SDHR plaintiff had argued that he was discriminated against "based on [his] arrest record, marital status, and sex," because in both proceedings plaintiff claimed that "he was suspended due to a discriminatory practice" and "the underlying facts of the claim [plaintiff] brought before the []SDHR [were] almost identical to those alleged in [his federal] case").

Nor can a plaintiff evade the derivative bar by suing a defendant who was not named in his SDHR or CCHR proceeding. *See, e.g., Vargas* v. *Reliant Realty*, No. 13 Civ. 2341 (PGG), 2014 WL 4446165, at *7-8 & n.9 (S.D.N.Y. Sept. 9, 2014) (finding that plaintiff could not pursue NYSHRL claim against defendant not named in plaintiff's SDHR complaint, because "the claims underlying [plaintiff's] []SDHR complaint [were] identical to those raised in" his

federal suit); *El Sayed* v. *Hilton Hotels Corp.*, No. 07 Civ. 11173 (DC), 2008 WL 3362828, at *4-5 (S.D.N.Y. Aug. 7, 2008) (reaching same result where plaintiff sued two defendants not named in his SDHR complaint).

Put simply, "[w]hen a plaintiff files a complaint with the [CCHR or SDHR], no [NYCHRL or NYSHRL] claims arising from the same facts can be adjudicated in federal court." *Alston* v. *Microsoft Corp.*, No. 08 Civ. 3547 (DC), 2009 WL 1116360, at *4 (S.D.N.Y. Apr. 27, 2009). As such, when a plaintiff files a federal lawsuit based on "the same operative events as" a prior SDHR or CCHR action, the court lacks subject matter jurisdiction to hear those claims. *Marecheau*, 2014 WL 5026142, at *4.

## 2. Plaintiff's Claims Under the NYSHRL and the NYCHRL Are Barred

Plaintiff does not oppose Defendant's motion to dismiss his NYSHRL and NYCHRL claims as barred by the election of remedies doctrine. (*See* Pl. Opp. 2 n.3). Although this does not end the Court's inquiry, *see Seaweed, Inc.* v. *DMA Product & Design & Marketing LLC*, 219 F. Supp. 2d 551, 553 (S.D.N.Y. 2002) ("[E]ven if a plaintiff does not oppose a motion to dismiss, a court should conduct an independent inquiry to determine whether the motion to dismiss has merit."), it is clear that Plaintiff's claims are indeed barred. Plaintiff's SAC does not allege any facts, events, or claims not already presented in Plaintiff's SDHR complaint. In fact, Plaintiff's SDHR complaint contains more detail than the SAC. All of "the core allegations" of Plaintiff's SAC "were already raised before the SHDR," and they cannot be relitigated in federal court after having been dismissed by the SDHR. *See Bonilla* v. *City of New York*, No. 18 Civ.

11

12142 (KPF), 2019 WL 6050757, at *11 (S.D.N.Y. Nov. 15, 2019). Plaintiff's non-federal claims are dismissed.

## B. Plaintiff's § 1981 Claims Are Not Precluded

### 1. Applicable Law

Defendant next claims that Plaintiff's § 1981 claims are barred by the doctrine of *res judicata* because Plaintiff already litigated the same set of facts in his proceeding before the SDHR. (*See* Def. Br. 12). "[T]he doctrine of *res judicata*, or claim preclusion, provides that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Burgos* v. *Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (italics added) (quoting *Allen* v. *McCurry*, 449 U.S. 90, 94 (1980)). In regards to § 1981 claims, the Supreme Court has held that "when a state agency 'acting in a judicial capacity … resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate' … federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn.* v. *Elliott*, 478 U.S. 788, 799 (1986) (internal citation omitted). Moreover, the Second Circuit has held that a determination of "no probable cause" by the SDHR will preclude a subsequent suit where: (i) there is "an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and [ii] the party to be estopped … had a full and fair opportunity to contest the decision now said to be controlling." *See Kosakow* v. *New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001)

(internal quotation marks omitted) (citing *Schwartz* v. *Public Adm'r*, 24 N.Y.2d 65 (1969)); *accord United States* v. *E. River Hous. Corp.*, 90 F. Supp. 3d 118, 151 (S.D.N.Y. 2015).[4] "The proponent of preclusion bears the burden of providing identity of issue, while the adverse party bears the burden of proving that he lacked a full and fair opportunity to litigate the issue." *Johnson* v. *Cty. of Nassau*, 411 F. Supp. 2d 171, 179 (E.D.N.Y. 2006).

## 2. *Res Judicata* Does Not Apply to Plaintiff's § 1981 Claims

In response to Defendant's argument that the SHDR's Determination and Order precludes his § 1981 claims, Plaintiff does not argue that there is no identity of issue between the facts alleged in the SDHR complaint and in the SAC. Instead, Plaintiff claims that the SDHR's determination has no preclusive effect because Plaintiff was not given "a full and fair opportunity to litigate." (*See* Pl. Opp. 5). In assessing this argument, the Court "must consider the 'realities of the prior litigation, including the context and other circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination.'" *Evans* v. *N.Y. Botanical Garden*, No. 02 Civ. 3591 (RWS), 2002 WL 31002814, at *5 (S.D.N.Y. Sept. 4, 2002) (quoting

---

[4]    The Court notes that although the *Kosakow* Court seemed to focus primarily on the question of issue preclusion, *see Kosakow* v. *New Rochelle Radiology Associates., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001), courts in this Circuit have relied on *Kosakow* in discussions of *res judicata* and claim preclusion as well, *see, e.g., United States* v. *E. River Hous. Corp.*, 90 F. Supp. 3d 118, 151 (S.D.N.Y. 2015) (relying on *Kosakow* in discussion of *res judicata* and collateral estoppel); *Johnson* v. *Cty. of Nassau*, 411 F. Supp. 2d 171, 178-79 (E.D.N.Y. 2006) (same); *Lloyd* v. *N.Y. Botanical Garden*, No. 03 Civ. 7557 (BSJ), 2004 WL 2093468, at *2-3 (S.D.N.Y. Sept. 17, 2004) (same). Therefore, the Court similarly relies on *Kosakow* as binding authority in this action.

*Ryan* v. *N.Y. Tel. Co.*, 62 N.Y.2d 494, 501 (1984)).  Specifically, the Court

should consider

> [T]he nature of the prior forum, the importance of the
> issue or claim in the prior proceeding, the party's
> incentive and initiative to litigate the issue or claim, the
> competence and expertise of counsel, the availability of
> new evidence, the difference in the applicable law, and
> the foreseeability of future litigation.

*Id.*

In challenging the adequacy of the SDHR determination, Plaintiff notes

that "there was no exchange of discovery, nor any evidentiary hearing," and

"[t]here is no indication in the Determination that Plaintiff was represented by

counsel or submitted any evidence." (*See* Pl. Opp. 5).  Instead, Plaintiff writes

that he "made certain 'assertions,' Defendant responded with its own

assertions, and the investigator relied upon nothing more than those assertions

and interviews conducted by Defendant's own Human Resources Department

of witnesses who were Defendant's employees." (*See id.*).  Indeed, although the

SDHR's Determination and Order makes clear that the SDHR received written

submissions from both Plaintiff and Defendant (*see* Mintz Decl., Ex. B), there

was no exchange of discovery, no hearing, no confrontation of witnesses, and

Plaintiff was *pro se*.

Under these facts, the Court finds that Plaintiff was not given a full and

fair opportunity to litigate his claims before the SDHR.  Although the Court

recognizes that the fact that "the NYSDHR investigation may not have afforded

Plaintiff the full panoply of procedures that are available to litigants in a civil

action" is insufficient in and of itself to prevent preclusion, *see Johnson*, 411 F.

14

Supp. 2d at 183, the Court finds it significant that Plaintiff was *pro se* before the SDHR. Indeed, in *Kosakow*, in addition to noting the procedural deficiencies present in SDHR cases, such as the lack of a hearing or any discovery, the Second Circuit found it significant that the plaintiff was *pro se* in concluding that estoppel did not apply. *See* 274 F.3d at 735-36 (noting that since the plaintiff was *pro se*, she "could not have been expected or able to frame her evidence within the context of the specific legal issues," and "her understanding of the implications of her decision [to complain to the SDHR] should not be cavalierly assumed"). This Court, and sister courts in this District, have similarly emphasized a plaintiff's *pro se* status. *See, e.g.*, *Martin* v. *City Univ. of N.Y.*, No. 17 Civ. 6791 (KPF), 2018 WL 6510805, at *7 (S.D.N.Y. Dec. 11, 2018) (declining to give preclusive effect to SDHR finding of "no probable cause"; "Nothing in the record indicates whether Plaintiff (i) proceeded *pro se* during the SDHR adjudication, (ii) was provided with discovery, or (iii) had the opportunity to present and cross-examine witness[es]."); *cf.* *Johnson*, 411 F. Supp. 2d at 181-82 (finding that plaintiff's claims were precluded, but distinguishing *Kosakow* in part because of "[t]he one key difference ... that the plaintiff was acting *pro se* before the NYSDHR"). The Court finds that, given the similarity of the prior proceeding, the similar lack of discovery or hearing, and Plaintiff's *pro se* status, the Second Circuit's decision in *Kosakow* squarely applies here. It accordingly concludes that Plaintiff did not have a full and fair opportunity to litigate his claims previously, and that his § 1981 claims are not precluded.

**C.    The Court Dismisses Most of Plaintiff's Federal Claims[5]**

**1.    Motions to Dismiss Under Rule 12(b)(6)**

Having found that Plaintiff's § 1981 claims are not precluded, the Court must now determine whether those § 1981 claims, along with the Title VII claims, should be dismissed for failure to state a claim.  When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

---

[5]    "The same core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981." *Wiercinski* v. *Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (internal quotation marks and bracketed text omitted) (quoting *Patterson* v. *Cty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004)).  Therefore, the Court will merge its analysis of Plaintiff's § 1981 claims into its analysis of his Title VII claims.

plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

To survive a motion to dismiss in an employment discrimination lawsuit, a complaint "need not contain specific facts establishing a *prima facie* case of discrimination." *Twombly*, 550 U.S. at 569 (internal alteration and quotation marks omitted) (quoting *Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 508 (2002)). At the pleading stage, "a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn* v. *City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)).

### 2. Plaintiff Has Failed to State a Race or National Origin Discrimination Claim

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To plead a *prima facie* case of discrimination, a plaintiff must plausibly allege that he or she "[i] is a member of a protected class, [ii] was qualified, [iii] suffered an adverse employment action, and [iv] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

Defendants do not contest the first two prongs, nor do they challenge whether Plaintiff's suspension-*cum*-termination constituted "an adverse employment action."  The primary dispute between the parties focuses on whether Plaintiff has adequately alleged "minimal support for the proposition that the employer was motivated by discriminatory intent" in suspending, and then terminating, him.  (*See* Def. Br. 17).[6]  Plaintiff must meet this burden "by alleging facts that directly show discrimination or facts that indirectly show discrimination."  *Vega*, 801 F.3d at 87.  Possible methods of alleging an inference of discrimination include: "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."  *Littlejohn*, 795 F.3d at 297 (quoting *Leibowitz* v. *Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Plaintiff is unable to allege adequate facts supporting the proposition that Defendant was motivated by discriminatory intent in suspending and

---

[6]     Plaintiff alleges that he and other Hispanic employees were "given the worst job assignments on the least desirable work shifts" (*see* SAC ¶ 2), and Plaintiff points to this as potential evidence of discrimination (*see* Pl. Opp. 7).  Insofar as Plaintiff asserts that these work assignments constituted adverse employment actions, Plaintiff's allegations are insufficient.  Although "the receipt of undesirable assignments may rise to the level of an adverse employment action," it cannot constitute an adverse employment action unless the plaintiff has also pleaded facts plausibly showing that such assignments were "accompanied by a material detriment to an employee's working conditions."  *See Henry* v. *N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406-07 (S.D.N.Y. 2014) (citing cases showing that a "material detriment" typically means a change in job responsibilities or a decrease in compensation).  Plaintiff has alleged no such facts here, and therefore the Court will not consider such work assignments to be adverse employment actions.  Moreover, Plaintiff does not raise in his briefing, and the Court will not consider, the argument that Defendant's failure to promote Plaintiff constituted an adverse employment action.  (*See* SAC ¶ 4).

terminating him.  Specifically, Plaintiff does not show either that (i) Defendant, through its supervisors, made any discriminatory statements; or (ii) Defendant treated employees outside of Plaintiff's protected group more favorably.

*First*, although the SAC does specifically allege numerous instances of disparaging remarks regarding Plaintiff's race (*see* SAC ¶¶ 8-9), none of these statements came from supervisors or other individuals who may have played a role in suspending or terminating Plaintiff.  Indeed, none of the individuals alleged to be responsible for the statements — Chris Sullivan, Danielle, Michelle Sage, and Mike Falco — was a supervisor of Plaintiff.  As the Second Circuit has recognized, the Court's analysis must focus on "whether the plaintiff has met [his] burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason.'"  *Vega*, 801 F.3d at 87.  The alleged statements are deplorable, but Plaintiff has not alleged how, if at all, they relate to Defendant's decision to suspend Plaintiff.  Sullivan's comments arguably relate to Plaintiff's suspension, insofar as they temporally precede, and perhaps incited Plaintiff to engage in the conduct that led to, that suspension, but Sullivan did not play any role in the decision to suspend Plaintiff.

This is not enough.  "It is well settled that verbal comments may constitute evidence of discriminatory intent if the plaintiff can establish a nexus between the alleged discriminatory remarks and the defendant's decision to terminate the plaintiff's employment," but "statements made by nondecisionmakers … do not constitute sufficient evidence to support a claim

19

of discrimination." *Dasrath* v. *Stony Brook Univ. Med. Ctr.*, No. 12 Civ. 1484 (SJF) (SIL), 2015 WL 1223797, at *12 (E.D.N.Y. Mar. 17, 2015) (internal quotation marks and brackets omitted) (quoting *Del Franco* v. *N.Y.C. Off-Track Betting Corp.*, 429 F. Supp. 2d 529, 536-37 (E.D.N.Y. 2006), *aff'd*, 245 F. App'x 42 (2d Cir. 2007) (summary order); *Price Waterhouse* v. *Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).  Although Plaintiff has alleged that Sullivan harbored discriminatory animus towards him, he has not alleged any statements from supervisors, foremen, or other decisionmakers showing that his race or national origin played a role in the decision to suspend him.  *See Salas* v. *N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) (finding that plaintiff failed to plead a Title VII discrimination claim where she had "not alleged that her supervisors or other managers … made any statements about her religion or her disability, let alone statements indicating those characteristics played a role in their decisions").  Plaintiff cannot rely on allegations of discriminatory statements made by nondecisionmakers to support an inference of discrimination.[7]

Second, Plaintiff argues that, in response to the verbal altercation between Plaintiff and Sullivan on November 16, 2017, Defendant suspended Plaintiff while allowing Sullivan simply to return to work.  (*See* Pl. Opp. 7-8).

---

[7]    The Court does not understand Plaintiff to be advancing a "cat's paw" theory of liability, pursuant to which "a discriminatory motive may be imputed to a final decision-maker if the decision-maker's adverse employment action was proximately caused by a subordinate who had a discriminatory motive and intended to bring about the adverse employment action." *Vasquez* v. *Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016) (internal quotation marks and citation omitted).

Plaintiff argues that this evidences disparate treatment, which supports an inference of discrimination. However, this argument fails immediately. "A plaintiff relying on disparate treatment evidence must show he was similarly situated in all material respects to the individuals with whom he seeks to compare himself." *Johnson* v. *City of New York*, No. 17 Civ. 7585 (PKC) (RER), 2019 WL 4468442, at *9 (E.D.N.Y. Sept. 18, 2019) (internal brackets omitted) (quoting *Mandell* v. *Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)). "[T]he plaintiff must at least plead allegations from which it is plausible to conclude the comparators are similarly situated." *Id.* (quoting *Blige* v. *City Univ. of N.Y.*, No. 15 Civ. 8873 (GBD) (KHP), 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017)). Here, Plaintiff pleads no facts whatsoever from which the Court can conclude that he and Sullivan were similarly situated. The only identifying fact alleged about Sullivan is that he is a "white male." (*See* SAC ¶ 7). From such a bare pleading, the Court cannot possibly conclude that Plaintiff and Sullivan "were subject to the same performance evaluation and discipline standards." *See Graham* v. *Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

Not only does Plaintiff's SAC fail to allege any facts supporting an inference of discrimination on Defendant's part, but it in fact undercuts Plaintiff's claim by providing a nondiscriminatory reason for Plaintiff's suspension and termination: the "last chance agreement." (*See* SAC ¶ 18). The LCA specifically provided that if Plaintiff engaged in any further conduct in violation of the Printing Office's rules or neglected his duties, it would "result in [Plaintiff's] Immediate Final and Irrevocable termination from employment with

[Defendant]." (*See* Mintz Decl., Ex. I). Plaintiff himself acknowledges that he yelled at Sullivan, and that the foreman said, "I told him [Plaintiff] to stop and he didn't stop." (*See* SAC ¶¶ 10, 13). Given this alleged sequence of events and the existence of the LCA, Plaintiff has alleged a valid, nondiscriminatory reason for his own suspension and termination, which is more than is needed to find that Plaintiff has failed to state a discrimination claim at the pleading stage. *See Vega*, 801 F.3d at 86-87 (explaining that plaintiff's only burden is to "plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent'" (citation omitted)).

As further evidence supporting an inference of discrimination, Plaintiff urges the Court to consider allegations that Plaintiff was subject to racial taunts, isolation, and poor work assignments, and that white supervisors were aware of this treatment and instructed Plaintiff and other Hispanic employees simply to ignore it. (*See* Pl. Opp. 7). However, as Plaintiff's brief concedes, these claims speak more to whether Plaintiff has a hostile work environment claim, not a discrimination claim. (*See id.* (arguing that "[t]hese racial taunts were 'typical' of the *hostile work environment* at the printing plant" (emphasis added))). As already discussed, a discrimination claim must be tied to an adverse employment action, *see Littlejohn*, 795 F.3d at 311, and the only adverse employment action Plaintiff has alleged is his suspension and termination. None of these allegations, as discussed above, relates to that suspension and termination, and therefore, whether considered individually or collectively, they fail to state a valid claim for relief. Lacking any allegation

supporting an inference of discrimination by Defendant, the Court must dismiss Plaintiff's race and national origin discrimination claim.

### 3. Plaintiff Has Failed to State a Retaliation Claim

"To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: [i] that [he] was engaged in protected activity by opposing a practice made unlawful by Title VII; [ii] that the employer was aware of that activity; [iii] that [he] suffered adverse employment action; and [iv] that there was a causal connection between the protected activity and the adverse action." *Galdieri-Ambrosini* v. *Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). At the pleading stage, the burden on the plaintiff is less onerous: the plaintiff must plausibly allege that defendants discriminated against him or took an adverse employment action against him because he opposed an unlawful employment practice. *Vega*, 801 F.3d at 90; *see Littlejohn*, 795 F.3d at 316. Nevertheless, in order for an adverse employment action to be "because" of opposition to an unlawful employment practice, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90. But-for causation requires proof "that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91.

As support for Plaintiff's retaliation claim, Plaintiff alleges that he and other Hispanic employees "made complaints about the hostile work environment" to "their white foremen" (*see* SAC ¶ 3), and that it was one of those white foremen who then ordered Plaintiff off the premises after the

November 16 incident with Sullivan (*see* Pl. Opp. 9-10).  Defendant broadly challenges this claimed retaliation, arguing that Plaintiff has failed to allege a protected activity, Defendant's awareness of same, or any causal connection between the protected activity and Plaintiff's suspension and termination.  (*See* Def. Br. 22-23).

The Court agrees that, given the lack of detail as to whom exactly Plaintiff complained, when such complaints occurred, or what the specific substance of the complaints was, it is questionable whether Plaintiff has adequately pleaded engagement in a protected activity.  Sister courts have dismissed retaliation claims where the plaintiff has failed to specify "when he lodged these complaints, who[m] he complained to, and whether [Defendant] knew about these complaints."  *See Herling* v. *N.Y.C. Dep't of Educ.*, No. 13 Civ. 5287 (JG), 2014 WL 1621966, at *9 (E.D.N.Y. Apr. 23, 2014); *see also Appel* v. *Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14 Civ. 2065 (AJN), 2015 WL 13654007, at *15 (S.D.N.Y. Mar. 26, 2015) (finding that plaintiff failed to state a retaliation claim when "she does not allege to whom she complained or when these complaints were made").  However, the Court need not decide whether Plaintiff has sufficiently alleged engagement in a protected activity because he has failed to allege any causal connection between his complaints and his suspension and termination.

A plaintiff can allege a causal connection either "[i] indirectly, by showing that the protected activity was followed closely by discriminatory treatment …; or [ii] directly, through evidence of retaliatory animus directed against the

24

plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon* v.

*N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).  Plaintiff does not point

to any direct evidence of retaliatory animus in this case.  Instead, Plaintiff

argues that because he has alleged that racially derogatory comments were

made continuously throughout his employment, and because he made

complaints to foremen about the hostile work environment, the Court should

infer that Plaintiff regularly made such complaints, and therefore that

Plaintiff's complaints must have occurred close in time to his suspension and

termination.  (*See* Pl. Opp. 10).  The Court cannot make such an inference.

Given the absence of any factual allegations concerning when these complaints

might have been made, Plaintiff has failed to establish a causal connection.

*See Rogers* v. *Fashion Inst. of Tech.*, No. 14 Civ. 6420 (AT), 2016 WL 889590, at

*7-8 (S.D.N.Y. Feb. 26, 2016) (finding that plaintiff failed to state a retaliation

claim where plaintiff had "fail[ed] to allege sufficient facts regarding the timing

of his complaints to establish causation"); *Jones* v. *Target Corp.*, No. 15 Civ.

4672 (MKB), 2016 WL 50779, at *9 (E.D.N.Y. Jan. 4, 2016) (dismissing

plaintiff's retaliation claim because the complaint "fail[ed] to identify any facts

regarding when the alleged events … occurred"); *Feliciano* v. *City of New York*,

No. 14 Civ. 6751 (PAE), 2015 WL 4393163, at *9 (S.D.N.Y. July 15, 2015)

(dismissing retaliation claim for failure to provide the dates of any of the

relevant events in question).  Plaintiff's retaliation claim is dismissed.

### 4. Plaintiff Has Adequately Stated a Hostile Work Environment Claim

"To establish a hostile work environment under Title VII, ... a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The Second Circuit has explained that a *prima facie* hostile work environment claim under Title VII has three elements — "a plaintiff must plead facts that would tend to show that the complained of conduct":

> [i] is objectively severe or pervasive — that is, ... creates an environment that a reasonable person would find hostile or abusive; [ii] creates an environment that the plaintiff subjectively perceives as hostile or abusive; and [iii] creates such an environment because of the plaintiff's [protected characteristic].

*Patane* v. *Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo* v. *Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).

Significantly, to survive a Rule 12(b)(6) motion to dismiss, a Title VII "'plaintiff need only plead facts sufficient to support the conclusion that [he] was faced with harassment of such quality or quantity that a reasonable

employee would find the conditions of [his] employment altered for the worse.'"

*Cowan* v. *City of Mount Vernon*, No. 14 Civ. 8871 (KMK), 2017 WL 1169667, at

*4 (S.D.N.Y. Mar. 28, 2017) (internal quotation marks and alterations omitted)

(quoting *Patane*, 508 F.3d at 113). "In evaluating whether the circumstances"

set forth in a complaint "suffice to find a hostile work environment, the [Second

Circuit] has 'repeatedly cautioned against setting the bar too high.'" *Lewis* v.

*Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 990 (S.D.N.Y. 2017)

(quoting *Patane*, 508 F.3d at 113).

At bottom, a court tasked with determining whether a work environment

was actionably hostile "must consider the totality of the circumstances

including [i] the frequency of the discriminatory conduct; [ii] its severity;

[iii] whether it is threatening and humiliating, or a mere offensive utterance;

and [iv] whether it unreasonably interferes with an employee's work

performance." *Littlejohn*, 985 F.3d at 321 (internal quotation marks omitted).

This analysis is "highly context-dependent," and courts assessing a workplace's

hostility "should evaluate the facts holistically rather than 'view individual

incidents in isolation' or in a 'piecemeal fashion.'" *Johnson* v. *J. Walter

Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 306 (S.D.N.Y. 2016) (quoting *Redd*

v. *N.Y. Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012)).

"Generally, unless an incident of harassment is sufficiently severe,

'incidents must be more than episodic; they must be sufficiently continuous

and concerted in order to be deemed pervasive.'" *Gorzynski* v. *JetBlue Airways

Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Alfano* v. *Costello*, 294 F.3d

365, 374 (2d Cir. 2002)).  But "'a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace.'" *Green* v. *Jacob & Co. Watches, Inc.*, 248 F. Supp. 3d 458, 470 (S.D.N.Y. 2017) (quoting *Feingold* v. *New York*, 366 F.3d 138, 150 (2d Cir. 2004)).  "[T]hat single act must be 'extraordinarily severe'" to rise to the level of a Title VII violation. *Id.* (quoting *Alfano*, 294 F.3d at 374).

Applying these principles, Plaintiff has stated a hostile work environment claim.[8]  Plaintiff has alleged that, throughout his time working at the Printing Center he was subjected to slurs such as "typical Spic" and degrading comments similar to those made by Sullivan on November 16, 2017.  (*See* SAC ¶¶ 8-9, 16).  Moreover, Plaintiff has alleged that he and other Hispanic employees were isolated and given the worst work assignments on the least desirable shifts.  (*See id.* at ¶ 2).  When Plaintiff complained to supervisors about this sort of treatment, he was told simply to "ignore" it.  (*See id.* at ¶ 3). Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has alleged a story of continual abuse and mistreatment, based on his race, throughout the eight years that he worked at the Printing Center.  Any reasonable employee under the same circumstances would find that the conditions of their employment had worsened.  *See Bonilla*, 2019 WL 6050757, at *16 (finding a valid claim of hostile work environment where plaintiff's claims

---

[8]     In finding that Plaintiff has stated a hostile work environment claim, the Court finds the claim to be based on Plaintiff's race, as opposed to his national origin.  The Court cannot identify — nor does Plaintiff point out — any way in which Plaintiff suffered from a hostile work environment due to his Puerto Rican origin.

were based "on a pattern of abusive activity of a quality and quantity that a reasonable employee would find worsened the conditions of his employment").

Contrary to Defendant's arguments, Plaintiff's allegations are not too conclusory to survive a motion to dismiss. Defendant's reliance on *Fullwood* v. *Sodexo, Inc.*, No. 16 Civ. 6527 (FPG), 2018 WL 3439866 (W.D.N.Y. July 17, 2018), and *LaSalle* v. *City of New York*, No. 13 Civ. 5109 (PAC), 2015 WL 1442376 (S.D.N.Y. Mar. 30, 2015) (*see* Def. Br. 25), is unavailing since those cases simply do not allege the same degree of abuse. The plaintiff in *Fullwood* alleged that a manager "called her a 'bitch all the time'" and "punched her in the arm three times." *See* 2018 WL 3439866, at *12. In *LaSalle*, the plaintiff alleged that a supervisor called her a bitch "on an unspecified number of occasions" and habitually made other inappropriate comments. *See* 2015 WL 1442376, at *7. Plaintiff, by contrast, alleges not only racial taunts throughout the entirety of his eight years of employment, but also chronic mistreatment affecting the type of work that he engaged in and the hours he was required to work. Plaintiff's allegations are different in kind from those presented in *Fullwood* and *LaSalle*, and in no way allege abuse that is "isolated … minor … or occasional." *See LaSalle*, 2015 WL 1442376, at *7 (internal brackets omitted). Plaintiff's allegations suffice to make out a valid hostile work environment claim.

In sum, the Court finds while Plaintiff has stated a hostile work environment claim under Title VII and § 1981, he has failed to state valid discrimination or retaliation claims. Moreover, Plaintiff's non-federal claims

are barred by the election of remedies doctrine. The Court will therefore grant Defendant's motion to dismiss as to all claims save Plaintiff's hostile work environment claims.

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

Defendant's motion is GRANTED with respect to Plaintiff's NYSHRL and NYCHRL claims, and with respect to Plaintiff's discrimination and retaliation claims under Title VII and § 1981.

Defendant's motion is DENIED with respect to Plaintiff's hostile work environment claim based on race discrimination, under both Title VII and 42 U.S.C. § 1981.

The Clerk of Court is directed to terminate the motions at docket entries 24 and 32.

On or before **February 14, 2020**, Defendant shall file a responsive pleading.

On or before **February 24, 2020,** the parties shall submit a proposed Case Management Plan, as well as the joint status letter contemplated by the Plan.

SO ORDERED.

Dated:   January 28, 2020
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge